UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYCHEL KEELER, as Representative of the Estate of MICHAEL KEELER,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO, et al.,<br><br>Defendants. | Case No.: 21-CV-1979-RSH-DDL<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>[ECF No. 22] |

Plaintiff brings federal civil rights and state law claims against the County of San Diego (the "County"), the San Diego County Sheriff, and Deputy Sheriffs Evan McCormick, Ryan Rose, Brandon Delima, and Katherine Barajas arising from the arrest and use of a chokehold against Plaintiff's deceased husband, Michael Keeler. For the following reasons, the Court grants Defendants' motion to dismiss Plaintiff's Complaint, ECF No. 22.

## I.  BACKGROUND

The Complaint alleges the following. At approximately 7:00 p.m. on February 6, 2020, Plaintiff and her husband, Michael Keeler, were outside the home of Michael's parents when they noticed deputies McCormick, Rose, Delima, and Barajas approaching them. ECF No. 1 ¶¶ 21-22. Michael approached the officers and asked if they needed help

with anything. *Id*. ¶ 23. McCormick asked who lived at the residence and asked Michael Keeler to identify himself. *Id*. ¶¶ 24-25. Michael Keeler provided his name. *Id*.

McCormick then told Michael Keeler that the officers had a warrant for his arrest. *Id*. ¶ 26. But this was not correct. *Id*. ¶ 27. The deputies instead had a warrant for Julius Keeler, Michael's brother. *Id*. ¶ 28. Julius looked nothing like Michael. *Id*. Julius was 6 foot 5 inches tall, weighed roughly 240 pounds, and had visible tattoos, including several on his neck. *Id*. Michael was 5 foot 11 inches tall, weighed 175 pounds, and had no tattoos. *Id*. The deputies nonetheless arrested and handcuffed Michael Keeler. *Id*. ¶ 29. Plaintiff pleaded with the deputies that they had arrested the wrong person. *Id*. ¶ 30. The Complaint continues:

> At some point, Defendant McCormick reached his arm around Michael's neck, cutting off the circulation. Michael felt Defendant McCormick lift until Michael's feet were off the ground. The Sheriff's Department calls this technique a 'carotid neck restraint' but everyone else knows it as a chokehold.

*Id*. ¶ 31. Plaintiff pleaded with the officers to let her husband go from the chokehold. *Id*. ¶ 32. Rose, Delima, and Barajas did not intervene. *Id*. ¶ 34. As Michael Keeler was losing consciousness entirely, McCormick let go of the chokehold. *Id*. ¶ 35. "Eventually Michael was taken to a Sheriff's station and booked into custody for allegedly resisting arrest." *Id*. ¶ 39.

The next day, after posting bond, Michael Keeler was taken to the hospital. *Id*. ¶ 40. Michael Keeler had suffered bruising and swelling in his neck, and injury to his wrists from the handcuffs. *Id*. ¶ 41. The San Diego County District Attorney's Office never brought charges against Michael Keeler. *Id*. ¶ 42.

As reflected in later court filings, Michael Keeler passed away later that same year, and Plaintiff was appointed as administrator of his estate in April 2021. ECF No. 23. Plaintiff does not allege that Defendants' conduct caused or was otherwise related to Michael Keeler's death.

Plaintiff filed her Complaint on November 23, 2021. ECF No. 1. Plaintiff, on behalf of Michael Keeler's estate, brings four federal claims pursuant to 42 U.S.C. § 1983, based on the following theories: excessive force, against McCormick (Claim One); failure to intervene, against Rose, Delima, Barajas (Claim Two); false arrest, against McCormick, Rose, Delima, and Barajas (Claim Three); and *Monell* liability, against the Sheriff and the County (Claim Seven). She also brings three state law claims against McCormick and the County: battery (Claim Four); intentional infliction of emotional distress (Claim Five); and negligence (Claim Six).

Defendants moved to dismiss the Complaint on May 19, 2022. ECF No. 22. The motion has been fully briefed. ECF Nos. 25 (opposition); 26 (reply).

## II. LEGAL STANDARD

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive a 12(b)(6) motion, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "We disregard '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' . . . After eliminating such unsupported legal conclusions, we identify 'well-pleaded factual allegations,' which we assume to be true, 'and then determine whether they plausibly give rise to an entitlement to relief.'" *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## III. DISCUSSION

### A. Federal Claims

Plaintiff's four federal claims are brought pursuant to 42 U.S.C. § 1983 ("Section 1983"). "Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). To state a claim under § 1983, a plaintiff must

allege that (1) the conduct he or she complains of was committed by a person acting under color of state law and (2) that conduct violated a right secured by the Constitution and laws of the United States. *Humphries v. Cnty. of Los Angeles*, 554 F.3d 1170, 1184 (9th Cir. 2009) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). Section 1983 "creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985).

### 1.   *Excessive Force (Claim One)*

Plaintiff alleges that McCormick used excessive force in violation of Michael Keeler's Fourth Amendment rights. Whether force used by a law enforcement officer was excessive depends on whether it was "reasonable." *Graham v. Connor*, 490 U.S. 386, 395 (1989). "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. at 397. The application of this standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

Here, Plaintiff's Complaint includes the allegations that McCormick's use of force was "excessive" and "not reasonable." ECF No. 1 ¶ 46. This is a conclusion, rather than a factual allegation that the Court must presume to be true on a motion to dismiss. With regard to the facts and circumstances of that use of force, the Complaint describes events leading up to the encounter, but is silent on the circumstances in which McCormick used the chokehold.

First, it is not clear whether the chokehold occurred before or after Michael Keeler was handcuffed. On one hand, the Complaint contains the allegation about the chokehold after the allegation that Michael Keeler was handcuffed. On the other hand, the description of the chokehold begins, "*[a]t some point*, Defendant McCormick reached his arm around Michael's neck …." *Id.* ¶ 31 (emphasis added). By using this phrase, Plaintiff seems to

avoid committing to when the chokehold occurred in relation to the other events. Nor does the Complaint contain any other allegations concerning whether Michael Keeler was in any way restrained at the time of the chokehold.

Second, the Complaint does not describe whether, before or at the time of the chokehold, Michael Keeler was resisting the officers. The Complaint alleges that "[e]ventually … Michael was taken to a Sheriff's station and booked into custody for allegedly resisting arrest." *Id.* ¶ 39. Later, in Claim Three, the Complaint alleges that the arrest of Michael Keeler was not supported by probable cause. *Id.* ¶ 58. This, however, is another legal conclusion rather than a factual allegation.

Third, the Complaint does not supply other basic facts surrounding the use of the chokehold. *See Graham*, 490 U.S. at 396 (holding that application of reasonableness standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.").

Accordingly, additional factual allegations are necessary to state a claim; and they may also be relevant to the application of the defense of qualified immunity, which the deputy defendants have raised. *See, e.g.*, *Tuuamalemalo v. Greene*, 946 F.3d 471, 477 (9th Cir. 2019) ("Given the state of the law in our circuit, it was clearly established that the use of a chokehold on a non-resisting, restrained person violates the Fourth Amendment's prohibition on the use of excessive force.").

### 2.  *Failure to Intervene (Claim Two)*

Plaintiff alleges that defendants Rose, Delima, and Barajas violated his Fourth Amendment rights when they failed to intervene "to prevent the use of excessive force by Defendant McCormick." ECF No. 1 ¶ 52. Officers have "a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *United States v. Koon*, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994), *rev'd on other grounds*, 518 U.S. 81

(1996). "[O]fficers can be held liable for failing to intercede only if they had an opportunity to intercede." *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000).

Here, Plaintiff alleges that McCormick used force against Michael Keeler that was unreasonable and violated his Fourth Amendment rights; that Rose, Delima, and Barajas were "physically present" when Defendant McCormick used force against Michael Keeler; that they had a "realistic opportunity to intercede"; and that they violated his rights by failure to intervene. ECF No. 1 ¶¶ 50-53. Apart from the allegation that the three co-defendants were present when McCormick used physical force, the foregoing consist of legal conclusions rather than factual allegations. The facts alleged in the body of the Complaint add that at the time McCormick used the chokehold, Plaintiff "was pleading with the officers to let her husband go." *Id.* ¶ 32.

Just as the Complaint pleads insufficient facts to support a claim that McCormick used excessive force, it pleads insufficient facts to support a claim that his co-defendants unlawfully failed to intervene in McCormick's use of excessive force. Additionally, the failure to intervene claim does not distinguish in any way among Rose, Delima, or Barajas, or provide additional information about where they were, what they saw or heard, or what they were doing at the time.

### 3. *False Arrest (Claim Three)*

Plaintiff alleges that all four deputies arrested him without probable cause, in violation of his Fourth Amendment rights. A plaintiff bringing such a claim must establish lack of probable cause. *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "Probable cause exists if the arresting officers 'had knowledge and reasonably trustworthy information of facts and circumstances sufficient to lead a prudent person to believe that [the arrestee] had committed or was committing a crime.'" *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1097-98 (9th Cir. 2013) (quoting *Maxwell v. Cnty. of San Diego*, 697 F.3d 941, 951 (9th Cir. 2012)).

Plaintiff has pleaded with sufficient detail that Michael Keeler looked nothing like his brother Julius Keeler, for whom the officers had an arrest warrant. But the Complaint also recites that Michael Keeler was booked into custody "for allegedly resisting arrest," ECF No. 1 ¶ 39, rather than pursuant to the arrest warrant for Julius Keeler. As discussed above, the Complaint simply contains no factual allegations to support the lack of probable cause. The Court cannot infer, from the Complaint's silence on the topic, facts that would suffice to state a claim.

### 4. *Municipal Liability (Claim Seven)*

The Complaint alleges that the moving force behind McCormick's use of excessive force against Plaintiff was a *de facto* policy, of the San Diego County Sheriff's Department, of using excessive force against minorities. ECF No. 1 ¶¶ 89-90. The Complaint alleges that this policy "was allowed to flourish through the inaction and deliberate indifference of the policymakers" at the Sheriff's Department. ECF No. 1 ¶ 88.

A municipality—here, the County of San Diego—can be liable under Section 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). "In order to establish liability for governmental entities under *Monell,* a plaintiff must prove '(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation.'" *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (quoting *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill,* 130 F.3d 432, 438 (9th Cir. 1997)).

"Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). In particular, "municipalities may be liable under § 1983 for constitutional injuries pursuant

to (1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602-03 (9th Cir. 2019). "A plaintiff cannot demonstrate the existence of a municipal policy or custom based solely on a single occurrence of unconstitutional action by a non-policymaking employee." *McDade v. West*, 223 F.3d 1135, 1141 (9th Cir. 2000). "Only if a plaintiff shows that his injury resulted from a 'permanent and well settled' practice may liability attach for injury resulting from a local government custom." *Thompson v. City of Los Angeles,* 885 F.2d 1439, 1444 (9th Cir. 1989), *overruled on other grounds by Bull v. City & Cnty. of San Francisco*, 595 F.3d 964, 977 (9th Cir. 2010) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).

As discussed above, Plaintiff has not stated a claim that his constitutional rights were violated.[1] He therefore has not stated a claim against the City for having a de facto policy that was the moving force behind such a constitutional violation.

Additionally, Plaintiff has not pleaded sufficient facts to support its allegation that the City – either as a matter of pervasive custom or practice, or as a matter of failure to train – had a *de facto* policy of using excessive force against minorities." ECF No. 1 ¶¶ 88-90.  The Complaint cites a January 2020 study by the American Civil Liberties Union for the proposition that the San Diego County Sheriff's Department were more likely to stop, search, arrest, and use force – and use more severe force – against Black individuals than against White individuals. *Id.* ¶¶ 81-83. The Complaint also refers to two lawsuits against the County – one settled in 2013 and the other in 2018 – that involved use of force by deputies, as well as a third lawsuit (dismissed by joint motion as of January 2023) in which McCormick and Delima were among the defendants. *Id.* ¶¶ 85-87. But as described by

---

[1]  Plaintiff cites *Hopkins v. Andaya*, 958 F.2d 881, 888 (9th Cir. 1992), for the proposition that "a failure-to-train claim may lie against a municipality despite exoneration of the individual officer—even in excessive force cases." ECF No. 25 at 8. Here, the issue is not exoneration of defendant McCormick, but rather Plaintiff's failure to state a claim for a constitutional violation.

Plaintiff in the Complaint, the ACLU study does not purport to address whether force used in any case was excessive or unreasonable. Nor does the fact that the County entered into sporadic prior settlements in cases alleging the use of force plead sufficient facts to support the Complaint's conclusion that the San Diego County Sheriff's Department has a policy of using unreasonable force, much less a policy of using unreasonable force against minorities.[2]

### B.   State Claims

Plaintiff brings the remainder of her claims under California law. The Complaint recites that the Court has supplemental jurisdiction over state law claims. ECF No. 1 ¶ 5. The supplemental jurisdiction statute, 28 U.S.C. § 1367, provides that a court may decline to exercise such supplemental jurisdiction where "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). As discussed above, the Court is dismissing Plaintiff's federal claims. The Court declines to exercise supplemental jurisdiction over her state law claims, which are therefore dismissed.

### C.   San Diego County Sheriff's Department As Defendant

Defendants also argue that Defendant the San Diego Sheriff's Department should be stricken because municipal departments, separate from municipalities themselves, are not subject to suit with respect to the claims in this case. Plaintiff concedes this argument and agrees that the San Diego Sheriff's Department should be dismissed. *See* ECF No. 25 at 10. Additionally, Plaintiff also did not name the San Diego County Sheriff's Department as a defendant in any of the enumerated claims. Accordingly, the Court dismisses the action as to the San Diego County Sheriff's Department.

---

[2]   The Complaint also states that "[a]ccording to the Los Angeles Times, between the years of 2016 and 2019, the San Diego Sheriff's Department had the distinction of leading the State of California with 21 carotid restraints that resulted in serious injury." ECF No. 1 ¶ 84. Plaintiff does not address whether any of those incidents involved excessive force.

### D. Leave To Amend

Under Federal Rule of Civil Procedure 15(a)(2), the Court "should freely give leave [to amend] when justice so requires." The record reflects that at the time of filing the Complaint, Plaintiff was not in possession of the body worn camera footage of the incident, but that Plaintiff now has that footage. ECF No. 1 ¶ 43, ECF No. 26 at 11. Because Plaintiff could potentially cure the defects identified above in an amended pleading, the Court will grant Plaintiff leave to amend.

### E. Statement From Successor In Interest

Defendants argue that the Complaint should also be dismissed because Plaintiff failed to file an affidavit and certified copy of her husband's death certificate, as required by California Code of Civil Procedure Section 377.32. Shortly after Defendants filed the motion to dismiss, Plaintiff filed an affidavit, attaching a death certificate. ECF No. 23. Defendants argue in their reply brief that Plaintiff's affidavit is still deficient because the death certificate Plaintiff attached was not certified. ECF No. 26 at 1-2.

The statute requires a certified copy. Cal. Civ. Proc. Code § 377.32(c). In the event Plaintiff files an amended complaint, on or before the filing of that pleading Plaintiff shall also file a renewed affidavit that complies with the requirements of the statute.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Complaint is **GRANTED**. Plaintiff's Complaint is **DISMISSED WITHOUT PREJUDICE**. Plaintiff may file an Amended Complaint within thirty (30) days of the date of this Order. If Plaintiff does not file an Amended Complaint in that time, this action shall be dismissed.

**IT IS SO ORDERED**.

Dated: February 13, 2023

*Robert S. Huie*
_____
Hon. Robert S. Huie
United States District Judge